```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

          -against-                      MEMORANDUM & ORDER
                                         17-CR-0657-1(JS)(ARL)
SHAWN GIBSON,

                    Defendant.
----------------------------------X
APPEARANCES
For United States:   Paul G. Scotti, Esq.
                     Madeline M. O'Connor, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York 11722

For Defendant:       Shawn Gibson, pro se
                     90530-053
                     Fort Dix
                     Federal Correctional Institution
                     Joint Base MDL
                     P.O. Box 2000
                     Fort Dix, New Jersey 08640
```

SEYBERT, District Judge:

Defendant Shawn Gibson ("Defendant"), proceeding pro se, seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic and his medical conditions. (Def. Mot., ECF No. 38; Def. Reply, ECF No. 40; BOP Medical Recs., ECF No. 42.) The Government opposes the motion. (Gov't Opp., ECF No. 39.) For the reasons set forth below, the motion is DENIED.

BACKGROUND

Defendant was arrested in December 2017 and charged with conspiracy to possess and distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(i). (See Indictment, ECF No. 1; Pretrial Services Report ("PSR"), ECF No. 30, at ECF p. 1.)  Defendant entered a guilty plea to count one of the indictment before Magistrate Judge Arlene R. Lindsay on June 19, 2018.  (Min. Entry, ECF No. 22.)  Judge Arthur D. Spatt accepted the guilty plea recommendation (ECF No. 24) and on December 21, 2018, sentenced Defendant to sixty months' imprisonment, the mandatory minimum.[1]

Defendant is currently serving his sentence at Federal Correctional Institution ("FCI") Fort Dix and is projected to be released on March 8, 2022.  See BOP.gov, https://www.bop.gov/inmateloc/index.jsp (last visited Dec. 8, 2020).  The Court is aware of the recent COVID-19 outbreak at FCI Fort Dix and the Bureau of Prison's ("BOP") response.  See United States v. Vega, No. 89-CR-0229, 2020 WL 7060153, at *1 (E.D.N.Y. Dec. 2, 2020) (Seybert, J.) ("[A]s of November 30, 2020, FCI Fort Dix was listed as having the highest number of positive COVID-19 cases among its inmates, with 303 inmates and 28 staff members listed as 'positive' for COVID-19 and 47 inmates and 6 staff members listed as

---

[1] This case was reassigned to the undersigned on June 19, 2020.

2

'recovered' from the virus."). However, according to the information maintained by the BOP, the numbers at FCI Fort Dix have decreased significantly since that late-November surge, at least among the inmate population: Out of a population of 2,739 total inmates, there are currently 16 inmates and 36 staff members listed as "positive" for COVID-19 and 354 inmates and 6 staff members listed as "recovered" from the virus. See COVID-19 Cases, BOP.gov, http://www.bop.gov/coronavirus/ (last visited Dec. 9, 2020). The Court has not been advised whether Defendant is one of the inmates who has contracted the virus.

Defendant is twenty-nine years old. In reply, Defendant submitted (1) a summary of his "Health Problems" recorded by BOP Health Services as of June 6, 2020, and (2) notes from an October 1, 2019 examination. (BOP Medical Recs., ECF No. 42.) According to the BOP Medical Records and as relevant here, Defendant is obese, with a body mass index ("BMI") of 39-39.9 kg/m$^2$,[2] and is currently being treated for hypertension. (Id. at ECF pp. 2-4.) Defendant also states that he has had asthma since childhood. (Id. at ECF p. 1.) Defendant's medical conditions are not indicated in his PSR, however, which advises that "[t]he defendant stated he is in excellent physical health with no medical problems reported."

---

[2] Defendant states that his BMI is now over 40, because he "ha[s] gained over 10 pounds" since BOP has implemented COVID-19 restrictions at FCI Fort Dix. (BOP Medical Recs. at ECF p. 1.)

3

(PSR at ECF p. 3.) According to Defendant, he has a "spotless disciplinary record" and "has used his period of incarceration to better himself," including by earning his G.E.D. and participating in "several recidivism-reducing programs." (Def. Mot. at 3.)

## DISCUSSION

### I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, No. 02-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the

4

sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United

5

States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

II. Analysis

Defendant filed his motion on May 4, 2020 requesting compassionate release in light of health concerns surrounding the COVID-19 pandemic and his medical conditions, namely, obesity, high blood pressure (hypertension), high cholesterol, and asthma. (See Def. Mot. at 1, 7.) Defendant argues that his conditions of confinement "create an unreasonable risk of exposure to COVID-19" and that FCI Fort Dix is "unable to adequately protect him from contracting the virus." (Id. at 5, 7.) Defendant also alludes to his "spotless" disciplinary record as evidence of "his new-found respect for the rules placed upon him." (Id. at 3.) Defendant has served seventy-five percent of his sentence and, if granted his request, intends to reside with his fiancé at her home in Mastic, New York. (Id. at 3.) The Government opposes the motion, arguing that (1) Defendant failed to exhaust his administrative remedies (Gov't Opp. at 4-7); (2) Defendant's generalized fear of contracting COVID-19 does not constitute extraordinary or compelling reasons warranting compassionate release (id. at 7-9); and (3) the Section 3553(a) factors counsel against release (id.

6

at 9-10). The Government also noted Defendant's failure to substantiate his medical conditions through personal records. (Id. at 9.)

As detailed above, in reply, Defendant submitted his BOP Medical Records. He also attached the BOP's response to his request for compassionate release. (See "Inmate Request to Staff Response," Reply, Ex. A, ECF No. 40.) Defendant further explains his efforts to request release from the Warden of FCI Fort Dix. (Reply at 2-3.) Defendant claims that on April 20, 2020, he filed his request, which was denied without prejudice on April 27, 2020, because Defendant failed to specify which of the Policy Statement 5050.50 provisions Defendant intended to invoke.[3] (Inmate Request to Staff Response.) In an Electronic Order dated July 8, 2020, the Court directed Defendant to "re-submit his request for Compassionate Release/Reduction in Sentence with the warden at FCI Fort Dix" and provide his consent under the Health Insurance Portability and Accountability Act ("HIPAA"). (July 8, 2020 Elec. Order.) The Court further directed the Government to serve Defendant with a copy of the Electronic Order and file proof of service on the docket. (Id.) However, the Government failed to serve the Electronic Order on Defendant or, if it did, failed to file proof of said service.

---

[3] Defendant also stated that his counselor remarked that his request would be "summarily denied." (Def. Mot. at 1.)

7

A. Exhaustion of Administrative Remedies

Despite the Government's apparent non-compliance with the Court's July 8, 2020 Electronic Order, which places the Court in an unenviable position, in reply, Defendant attached the Inmate Request to Staff Response, evincing that he made a request with the warden at FCI Fort Dix. As presented to the Court, the Inmate Request to Staff Response effectively denied Defendant's request, albeit on technical grounds, and, coupled with the remark from Defendant's counselor, constituted a denial. In any event, the Court "need not wade into the exhaustion question because more than 30 days have lapsed since the warden . . . received [Defendant's] petition for compassionate release," United States v. Genovese, No. 18-CR-0183, 2020 WL 4004164, at *2 (S.D.N.Y. July 15, 2020) (citations omitted), and turns to the merits of the motion.

B. Extraordinary and Compelling Reasons

This Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on the defendant's specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. United States v. Phillip, No. 14-CR-0264, 2020 WL 5633100, at *3 (E.D.N.Y. Sept. 21, 2020) (collecting cases); Vega, 2020 WL 7060153, at *3; United States v.

8

Evans, No. 18-CR-0022, 2020 WL 6747881, at *3 (D. Conn. Nov. 17, 2020). Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the Centers for Disease Control and Prevention's ("CDC") guidance on at-risk health populations. See Vega, 2020 WL 7060153, at *3; United States v. Barajas, No. 18-CR-0736, 2020 WL 3976991, at *9 (S.D.N.Y July 13, 2020); Evans, 2020 WL 6747881, at *3 (collecting cases). Where, as here, a defendant argues that medical vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" justifying compassionate release, courts have engaged in a fact-intensive inquiry that considers the defendant's age, the severity and documented history of the defendant's health conditions, defendant's history of managing those conditions in prison, the proliferation and status of infection at defendant's facilities, and the proportion of the term of incarceration that has been served. United States v. Brady, No. 18-CR-0316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal citations omitted).

Upon a review of the submissions, the Court finds that Defendant has not established "extraordinary and compelling reasons" to modify his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Defendant, who is twenty-nine years old, does not fall into a high-risk age group for COVID-19 complications. See Older Adults, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

9

precautions/older-adults.html (last updated Dec. 7, 2020); see also Phillip, 2020 WL 5633100, at *4. "In the macabre realm of mortality statistics, less than 1% of all fatal COVID-19 cases occurred among individuals younger than 35." United States v. Newton, No. 18-CR-0022, 2020 WL 6784267 (D. Conn. Nov. 18, 2020) (citing Provisional Death Counts for Coronavirus Disease 2019 (COVID-19): Weekly Updates by Select Demographic and Geographic Characteristics, CDC, Table 1, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (last updated Dec. 9, 2020)).

However, Defendant is obese, treated for hypertension, and claims to have had asthma since childhood.[4] These are conditions that, according to the CDC, are known to correlate or might correlate to an increased risk of severe complications from contracting COVID-19. People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

---

[4] The Court has reviewed the record, including the PSR and Defendant's BOP Medical Records, and cannot find any documentary support for Defendant's claim that he has asthma. In any event, even crediting Defendant's claim, Defendant has not offered evidence that his asthma is "moderate-to-severe," and he appears to have the condition under control. See United States v. Leon, No. 15-CR-877, 2020 WL 3100593, at *2 (S.D.N.Y. June 11, 2020) (noting that although "asthma undoubtedly presents risks related to COVID-19," the defendant was "young and does not have other health conditions that compound that risk"); United States v. Mascuzzio, No. 16-CR-576, 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020) (finding no "extraordinary and compelling circumstances" where forty-year-old defendant failed to establish that his asthma was "severe enough to warrant compassionate release").

10

precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). Nevertheless, there is no indication in Defendant's BOP Medical Records, which are not extensive, that his health conditions are not well controlled; indeed, since Defendant's medical conditions are not reflected in the PSR, it appears Defendant developed these conditions while incarcerated and the BOP had provided him with a course of treatment. See United States v. Sanchez, No. 08-CR-0789, 2020 WL 4742916, at *2 (S.D.N.Y. June 17, 2020) (denying compassionate release where "nothing in the record suggests that [Defendant] has been 'unable to care for himself' or that he has 'been neglected by [prison] medical personnel.'") (collecting cases); United States v. Figueroa, No. 04-CR-0515, 2020 WL 6873433, at *4 (E.D.N.Y. Nov. 23, 2020) (denying compassionate release where the defendant did "not suggest that he has been unable to manage any medical condition he may have, or that the BOP has neglected his care") (collecting cases).

As noted supra, the Court recognizes that FCI Fort Dix experienced a COVID-19 outbreak in late November 2020, and that it may again see a surge of cases. But "the mere possibility that an inmate with medical issues may contract Covid-19 is not necessarily an extraordinary and compelling reason" warranting release. United States v. Sturgis, No. 10-CR-6022, 2020 WL 7063359, at *5 (W.D.N.Y. Nov. 24, 2020) (finding forty-eight-year-old defendant

with obesity and poorly controlled hypertension detained at FCI Fort Dix failed to show "extraordinary and compelling" reasons for his release based on those medical conditions); see also United States v. Scronic, No. 18-CR-0043, 2020 WL 7048245, at *2 (S.D.N.Y. Nov. 30, 2020) (finding forty-nine-year-old defendant who is overweight and with high blood pressure detained at FCI Fort Dix failed to show "extraordinary and compelling" reasons for his release); Evans, 2020 WL 6747881, at *6-7 (finding forty-eight-year-old defendant with obesity and hypertension failed to show "extraordinary and compelling" reasons for his release based on those medical conditions); Newton, 2020 WL 6784267, at *6 (finding twenty-six-year-old defendant with obesity and asthma failed to show "extraordinary and compelling" reasons for his release based on those medical conditions); United States v. Goldberg, 13-CR-0120, 2020 WL 6273947, at *3 (E.D.N.Y. Oct. 26, 2020) (collecting cases where defendants who are obese, among other medical conditions, including hypertension, were denied compassionate release). In any event, as reflected in the records maintained by the BOP, nearly all the inmates at FCI Fort Dix who recently contracted COVID-19 have since recovered, and there are currently only sixteen inmates listed as COVID-19 positive. "The Court is mindful that the risk that COVID-19 will return to [FCI Fort Dix] cannot be fully eliminated" but finds the downward trend reassuring. United States v. Pichardo, No. 17-CR-0512, 2020 WL

12

3819602, at *2 (S.D.N.Y. July 8, 2020) (observing a similar outbreak of COVID-19 cases at FCI Fort Dix in April that abated).

Accordingly, the Court finds that Defendant has not established "extraordinary and compelling reasons" to modify his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

C. The 3553(a) Factors

Even if the Court believed Defendant had established "extraordinary and compelling" reasons to modify his sentence, the Section 3553(a) factors weigh against his release. Although Defendant pleaded guilty to a nonviolent crime, "there is a strong need for [him] to serve the sentence that was imposed." United States v. Graham, No. 16-CR-0786, 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020). Defendant pleaded guilty to selling a large amount of heroin and fentanyl in 2016 and 2017. As the Government points out, during that time, and as it remains today, "opioid related hospitalizations and deaths from overdoses increased dramatically." (Gov't Opp. at 10.) While Defendant was not charged in connection with any specific overdose deaths, he contributed to the proliferation of dangerous drugs in his community. As such, a "reduced sentence would not reflect the harm suffered." United States v. Itzchaki, No. 16-CR-0236, 2020 WL 4194800, at *2 (S.D.N.Y. July 21, 2020).

Additionally, fifteen months remain on Defendant's sixty-month sentence, that is, twenty-five percent of his

13

mandatory-minimum sentence remains unserved. As such, granting Defendant's request for compassionate release, "when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors." United States v. Martinez, No. 12-CR-0862, 2020 WL 2079542, at *3 (S.D.N.Y. Apr. 30, 2020); United States v. Knight, No. 17-CR-0335, 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) ("Though Defendant has served more than 70% of his anticipated term of imprisonment, considering his expected good time credit, his crime is serious and warrants him serving his full term of imprisonment."). The Court accordingly denies release at this time.[5]

---

[5] To the extent not already pursued, Defendant may seek relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.

CONCLUSION

For the reasons stated, Defendant's motion for compassionate release (ECF No. 38) is DENIED.  The Government is directed to mail a copy of this Memorandum and Order to the pro se Defendant at his address of record.

SO ORDERED.

/s/_JOANNA SEYBERT     __
Joanna Seybert, U.S.D.J.

Dated: December 14, 2020
       Central Islip, New York

15